UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NORAYMA MULLER-DAVILA,

    Plaintiff,

v.                                              CASE NO. 8:17-cv-505-T-16AAS

CARE PLACEMENT HOME HEALTH
AGENCY, INC.,

    Defendant.
_____/

**O R D E R**

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment, Statement of Undisputed Facts, and attachments (Dkts. 23 & 24), and Plaintiff's Response in Opposition, Statement of Material Disputed Facts, and various attachments (Dkts. 28, 29, 30, 31 & 32). After careful consideration of the submissions of the parties, the applicable law, and the entire file, the Court concludes the motion is due to be denied.

This sole issue on summary judgment is whether Plaintiff is an employee or independent contractor of Defendant for purposes of Title VII of the Civil Rights Act of 1964 (Title VII) and the Florida Civil Rights Act (FCRA), section 760.01, *et seq.,* of the Florida Statutes, for civil rights violations relating to her pregnancy while she worked for

Defendant.[1] Independent contractors may not seek redress for violations of these civil rights – only employees are covered under the statutes. Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1242 (11th Cir. 1998). The hybrid test for determining whether an individual is an employee or independent contractor under Title VII or the FCRA considers both common-law principles and the "economic realities" of the situation, focusing on the employer's right to control. Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1234 (11th Cir. 2004); Cobb v. Sun Papers, Inc., 673 F.2d 337, 341 (11th Cir. 1982); Holland v. Gee, 719 F.Supp.2d 1361, 1365 (M.D. Fla. 2010); Merrick v. Rinker Materials of Fla., Inc., 2009 WL 10670503, at *6-7 (M.D. Fla. 2009). Many factors are considered with no one factor being dispositive. That Plaintiff signed an independent contractor agreement with Defendant is not the quintessential element in deciding the control issue. See Holland, 719 F.Supp.2d at 1365; Spirides v. Reinhardt, 613 F.2d 826, 832-33 (D.C. Cir. 1979) (rejecting exclusive reliance on contract language in finding work relationship was one of independent contractor).[2]

---

[1] According to Plaintiff she was told that her scheduled assignments had been cancelled and she was being removed from the schedule for the reason that she suffered from morning sickness. See docket 23-2, pages 36-39 (Plaintiff deposition).

[2] Even if it were considered, the agreement contains a provision giving Defendant the "right to provide [the caregiver] with work rules which are designed to promote [Defendant's] image . . . [and the caregiver] will, upon request, provide [Defendant] with any and all records and/or reports relative to services provided to patients, member of patients' family, or any person with whom [the caregiver] becomes acquainted or familiar with as a result of his/her placement by [Defendant] with a patient." See docket 23-2, pages 95 (Exhibit 3 to Plaintiff deposition). This provision might lean on the side of placing control in Defendant such that negates other language supporting an independent

Providing both skilled and unskilled services to patients in their homes, a licensed home health agency must follow certain requirements by law. See docket 30-2, page 9 (Hagan deposition, page 27). For example, the home health aide worker is not required to pay for their certification of home health aide training; rather, a licensed home health agency may provide the training. § 400.497(1), Fla. Stat. (2017) ("Licensed home health agencies may provide this training"); Fla. Admin. Code R. 59A-8.0095(5)(d)-(j) ("For every home health aide, a home health agency shall have on file documentation of successful completion of at least forty hours of training in [particular] subject areas . . . [a] licensed home health agency may choose to administer the Home Health Aide Competency Test . . . in lieu of the forty hours of training"). Licensed home health agencies must provide home health aide workers with in-service training each year as well as training for cardiopulmonary resuscitation. Fla. Admin. Code R. 59A-8.0095(5)(k) ("home health aides . . . must receive in-service training each calendar year. Training must be provided to obtain and maintain a certificate in cardiopulmonary resuscitation."). A licenced home health agency is required to prepare a written assignment of the home health aide worker's duties, and the worker must abide by them. Fla. Admin. Code R. 59A-8.0095(5)(l) ("The performance of all personal care activities contained in a written assignment by a licensed health professional employee or contractor of the home health agency"). The agency must obtain liability and malpractice

---

contractor relationship.

coverage for home health aide workers. § 400.471(3), Fla. Stat. (2017) ("the home health agency must also obtain and maintain [malpractice and liability insurance] in an amount of not less than $250,000 per claim").

In addition to statutory requirements and regulations placed on a licensed home health agency such as Defendant, which necessarily require a fair amount of control, the issue of control is determined with an eye toward whether the employer "has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved." Cobb, 673 F.2d at 340 (quoting Spirides, 613 F.2d at 831-32); Merrick, 2009 WL 10670503, at *8. The court must look to whether the employer had the right to control the "means and manner" of the worker's performance. Id. On summary judgment, this Court may consider only those undisputed, material facts in the light most favorable to the nonmoving party. Ross v. Jefferson Cnty. Dep't of Health, 701 F.3d 655, 658 (11th Cir. 2012). Disputed, material facts prohibit the grant of summary judgment. Fed.R.Civ.P. 56(a).

The following undisputed, material facts exist. Defendant has been licensed as a home health agency since 2005 by Florida's Agency for Health Care Administration. Defendant's caregivers provide unskilled services such as daily living activities, light housekeeping, meal planning and preparation, transporting, and companionship. See docket 31-1, page 44 (Homemaker/companion Job Description); docket 31-1, pages 49-54 (Caregiver Manual); and docket 23-1, pages 1-2, ¶ 4 (Hagan declaration). Plaintiff

submitted certification showing that she had completed her 80-hour training in home health skills. Although Plaintiff was permitted to work for other home health agencies, she and others worked full time for Defendant. See docket 30-7, page 6 (Enriquez deposition, page 18); and docket 30-3, pages 7-8 (Jabonero deposition, pages 21-23). She did, however, decline to work weekends and with proper advance notice, she cancelled about three to four weekdays. She was paid a non-negotiable hourly rate and not by the job, and she was paid every two weeks. See docket 30-3, page 4 (Jabonero deposition, page 10). This fact alone lends itself to a finding that she was an employee because typically an independent contractor "has at least an equal say in the rate to be charged for particular work." Solis v. A+ Nursetemps, Inc., 2013 WL 1395863, at *6 (M.D. Fla. 2013). Plaintiff filed her 2015 taxes as an independent contractor. See docket 23-2, pages 55-57 (Plaintiff deposition). She did not receive annual leave, sick leave, health insurance or disability insurance.

Defendant required Plaintiff and other caregivers to follow the company manual, policies, and procedures. See docket 30-2, page 11 (Hagan deposition, page 37); docket 31-1, pages 49-58 (Caregiver Manual); and docket 31-1, page 44 (Homemaker/companion Job Description). Plaintiff provided her own scrubs and laundered them, which she was required to wear together with a company identification badge with her name and her position as one of Defendant's home health aides. See docket 23-2, pages 71-72 (Plaintiff deposition); docket 30-1, page 8 (Fanovich

deposition, page 24); and docket 30-7, page 7 (Enriquez deposition, page 21). Plaintiff performed the home health aide duties defined in the care plan provided by Defendant and submitted reports concerning her work upon completion to Defendant. See docket 30-2, page 7 (Hagan deposition, page 20) and docket 23-2, page 18 (Plaintiff deposition). Some of the policies and guidelines contained mandates such as restricted use of the worker's cell phone, a rigid absentee and vacation policy, and the requirement that the worker contact Defendant for verification about any uncertainty regarding whether the worker could perform a certain task. To ensure compliance, Defendant conducted four nurse supervisory visits of Plaintiff in one year. See docket 30-6, pages 5-6 (Lang deposition, pages 11-16). In a somewhat similar case where the worker's hours and work schedule were controlled by the employer, the worker was supervised while working, and the employer handled her schedule and decided to limit her hours, the court denied summary judgment, finding that whether the worker was an independent contractor or employee was a factual determination to be made by a jury. Helm v. J.H. Gatewood Emergency Servs., P.A., 2012 WL 2793134, at *3 (M.D. Fla. 2012).[3]

Having found thus far that this record could lead to either a finding of employee or independent contractor, the Court finds that numerous disputed, material facts abound in

---

[3] Cf. Hughes v. Family Life Care, Inc., 117 F.Supp.3d 1365, 1371-72 (N.D. Fla. 2015) (finding employee-employer relationship under FLSA "economic reality" test and noting that worker's "only freedom with respect to the jobs she undertakes is the freedom to limit those she accepts.").

the submissions of the parties. For example, the owner, Ms. Fanovich, and two employees of Defendant testified that work performed between the hours of 9:00 a.m. and 5:00 p.m. was considered employee work, and work performed outside those hours was considered independent contractor work; yet Ms. Hagan, the business manager of Defendant, testified that the characterization did not magically change when the clock struck 5:00 p.m. See docket 30-7, pages 5 & 11 (Enriquez deposition, pages 11-12 & 35-36); docket 30-1, page 7 (Fanovich deposition, pages 19-20); docket 30-3, pages 4-5 & 9 (Jabonero deposition, pages 10-12 & 30); and docket 30-2, pages 7-8 (Hagan deposition, pages 22-23). It is also disputed whether Defendant reimbursed Plaintiff for any expenses and whether Defendant was responsible for paying for training and ongoing education. See docket 31-1, pages 49-58 (Caregiver Manual); and docket 30-3, page 10 (Jabonero deposition, page 34).

Highly contested is whether Defendant supervises the manner in which Plaintiff performs her work. Defendant's labeling almost every worker as an independent contractor does not make it so. When a worker's duties constitute "an integral part of the employer's business, this factor weighs in favor of finding an employer-employee relationship." Cardinale v. Southern Homes of Polk Cnty., Inc., 2008 WL 788460, at *6 (M.D. Fla. 2008). Here, it is difficult to imagine a licensed home health agency without home health aides, companions, and transporters. Along the same lines, it seems axiomatic that unskilled individuals taking care of the elderly require some type of

supervision. Fla. Admin. Code R. 59A-8.0095(5)(a) ("A home health aide . . . shall provide personal care services assigned by and under the supervision of a registered nurse."); § 400.487(5) & (6), Fla. Stat. (2017) (caregivers must be "monitored and managed" by the home health agency and the services "must be supervised and coordinated in accordance with a plan of care."). Not only is some supervision required by law, but the degree and extent of the supervision is one of the determining factors in the relationship assessment. The many disputed, material facts in this record are evident, requiring a factual resolution by a jury.

As a final observation, the Court finds that the decision of the appeals referee, which denied Plaintiff's reemployment assistance benefits, should not be considered on summary judgment. Under Florida law, the decision of a hearing officer under Chapter 443 is "not conclusive or binding in any separate or subsequent action or proceeding" with certain exceptions not applicable here. § 443.0315, Fla. Stat. (2010). Additionally, the decision is unduly prejudicial and irrelevant in that a determination on reemployment assistance benefits has nothing to do with an alleged violation of civil rights. Cf. Dagnesses v. Target Media Partner Operating Co., 2016 WL 10647255, at *4 (S.D. Fla. 2016) (excluding award of unemployment compensation on grounds of inadmissibility based on irrelevancy and undue prejudice in Title VII/FCRA case). The decision is also inadmissible as hearsay under Federal Rule of Evidence 803(8)(c). Cf. Claybrone v. Goldring Gulf Dist., 2015 WL 5619523, at *2-3 (N.D. Fla. 2015) (striking decision of

appeals referee of Florida Department of Equal Opportunity from summary judgment record because decision contained legal conclusions and circumstances indicated lack of trustworthiness). Here, for example, the appeals referee wrote that the evidence revealed Defendant did not exercise control over when or how Plaintiff performed the work. See docket 24-1, page 4. This legal conclusion does not necessarily follow from the disputed, material facts regarding control on the record in this case.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 24) is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on March 30, 2018.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:
Counsel of Record